```
                  UNITED STATES BANKRUPTCY COURT
                FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                          )
                                )     Chapter 7
RYAN DUANE BAKKER               )
LISA ANN BAKKER,                )     Bankruptcy No. 04-01036
                                )
      Debtors.                  )
--------------------------------
DUNKERTON COOPERATIVE           )
ELEVATOR,                       )     Adversary No. 04-9098
                                )
      Plaintiff,                )
                                )
vs.                             )
                                )
RYAN DUANE BAKKER               )
LISA ANN BAKKER                 )
                                )
      Defendants.               )
```

**ORDER RE: OBJECTING TO DISCHARGE OF DEBT**

This matter came on for trial on December 13, 2005 pursuant to assignment. Plaintiff Dunkerton Cooperative Elevator (Dunkerton) was represented by attorney Roger L. Sutton. Debtors Ryan and Lisa Bakker were represented by attorney Michael C. Dunbar. After hearing evidence and arguments, the Court took this matter under advisement. The time for filing briefs has passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

**STATEMENT OF THE CASE**

Plaintiff Dunkerton supplied feed to Debtors. In April 2003, Debtors signed a Judgment of Confession in Grundy County, Iowa. Plaintiff asserts Debtors entered into the Judgment of Confession with the intent to defraud, hinder, or delay and to induce Plaintiff to continue supplying feed. Debtors assert they made payments according to the payment schedule listed in the Judgment of Confession, and their debt should be discharged.

1

## FINDINGS OF FACT

Mr. Bakker has been in the hog farming business for many years and has banked with Peoples Savings Bank in Wellsburg, Iowa for approximately 20 years. He received credit and loans from the bank and granted the bank security liens on his hogs.

As part of his hog farming operation, Mr. Bakker entered into an agreement with Dunkerton to obtain feed. He received feed from Dunkerton from 2001 through approximately November 2003. The relationship continued without incident until December 2002.

Beginning in December 2002, Dunkerton became concerned with the amount of Mr. Bakker's bill. Mr. and Mrs. Bakker signed a Judgment by Confession in April 2003 for the amount of $104,042.76. They also signed a Deferred Payment Agreement in May 2003. The parties disagree as to the terms of the Judgment by Confession and the Deferred Payment Agreement. Debtors assert they were to pay $30,000 per month to pay their past due debt. Mr. Bakker testified that he was told on several occasions by Randy Evans from Dunkerton's accounts receivable department that the Judgment by Confession would not be filed as long as the $30,000 checks were received each month. Dunkerton asserts that Mr. Bakker was required to keep his present account current as well as pay $30,000 per month on his past due debt.

In June 2003, Mr. Bakker gave Dunkerton three post dated checks for the months of June, July, and August 2003, each in the amount of $30,000. Peoples Bank honored all of these checks. Mr. Bakker gave Dunkerton three more post dated checks in July in the amount of $30,000 per check for the months of September, October, and November 2003. In September 2003, Mr. Bakker gave Dunkerton a check for $20,000 in addition to the post dated check that had already been issued. Mr. Bakker gave checks to Dunkerton in the amount of $7000 each on September 24, October 1, October 10, October 16, and October 24, 2003. Peoples Bank honored all of the checks made out for $7000 and the post dated check for September 2003.

Dunkerton filed the Judgment by Confession in Grundy County, Iowa on October 10, 2003. The Judgment by Confession was presented to Peoples Bank in late October or early November 2003. At that time, Peoples Bank ceased honoring checks written by Mr. Bakker and closed his account for two

2

weeks.  Three checks written by Mr. Bakker to Dunkerton were
returned to Dunkerton marked insufficient funds, including the
two post dated checks for October and November 2003.

Dunkerton asserts that Mr. Bakker told Peoples Bank not
to honor any more checks written to Dunkerton because he
believed it had breached the terms of the Judgment by
Confession.  Mr. Bakker testified that he did not tell the
bank to stop paying Dunkerton, and he intended to pay
Dunkerton when he wrote the post dated checks.  Mr. Bakker
ceased buying feed from Dunkerton on or about November 2003.

## CONCLUSIONS OF LAW

Dunkerton asserts amounts owed by Debtors are excepted
from discharge under § 523(a)(2)(fraud or false pretenses and
false financial statement.  It also objects to Debtors'
discharge under § 727(a)(4)(A) (false oath or account),
(a)(4)(C) (gave money for forbearing to act), or (a)(5)
(failure to explain loss of assets) and § 727(a)(7)(improper
acts in connection with another Bankruptcy case concerning an
insider).

Section 523(a) states, in pertinent part:

(a) discharge under 727 . . . of this title does not
    discharge an individual debtor from any debt-

    . . .

    (2) for money, property, services, or an
    extension, renewal, or refinancing of credit, to
    the extent obtained by-

        (A) false pretenses, a false
        representation, or actual fraud,. . .

        (B) use of a statement in
        writing-

            (i) that is materially false;

            (ii) respecting the debtor's or an
            insider's financial condition

            (iii) on which the creditor to whom

3

>               the debtor is liable for such money,
>               property, services, or credit
>               reasonably relied; and
>
>               (iv) that the debtor caused to be made
>               or published with intent to deceive;

Section 727(a) states, in pertinent part:

>   (a) The court shall grant the debtor a discharge,
>   unless-
>
>   . . .
>
>       (4) the debtor knowingly and fraudulently, in or
>       in connection with the case-
>
>           (A) made a false oath or account;
>
>           . . .
>
>           (C) gave, offered, received, or attempted
>           to obtain money, property, or advantage, or
>           a promise of money, property, or advantage
>           for acting or forbearing to act.
>
>       (5) the debtor has failed to explain
>       satisfactorily, before determination of denial
>       of discharge under this paragraph, any loss of
>       assets or deficiency of assets to meet the
>       debtor's liabilities
>
>       . . .
>
>       (7) the debtor has committed any act specified .
>       . . on or within one year before the date of the
>       filing of the petition, or during the case . . .
>       under this title or under the Bankruptcy act
>       concerning an insider.

   As the primary goal of the Bankruptcy Code is to provide honest debtors with a "fresh start," exceptions to discharge are generally construed narrowly against the creditor and liberally for the debtor. <u>In re Kline</u>, 65 F.3d 749, 751 (8th Cir. 1995); <u>In re Van Horne</u>, 823 F.2d 1285, 1287 (8th Cir. 1987). Plaintiffs have the burden of proving the elements of

a claim under § 523 by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286-87 (1991). Section 727(a) also requires that Plaintiff prove the elements of its claim by a preponderance of the evidence. In re Juehring, 332 B.R. 587 (Bankr. N.D. Iowa 2005).

### SECTION 523(a)(2)

Section 523(a)(2)(A) excepts a debt from discharge if it is obtained by "false pretenses, a false representation, or actual fraud." Five elements must be satisfied before a debt will be excepted from discharge under § 523(a)(2)(A): (1) the debtor made false representations; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representations, Field v. Mans, 615 U.S. 59,72 (1995); and (5) the creditor sustained the alleged injury as a proximate result of the representations having been made. Van Horne, 823 F.2d at 1287. Additionally, § 523(a)(2) has been found to require that the debt arise from the debtor's fraudulent acquisition of money, property, services or credit, or that the debtor obtain some benefit through the fraud or misrepresentation. In re Mauer, 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000); In re Bonefas, 41 B.R. 74, 77 (Bankr. N.D. Iowa 1984)("The initial question to be answered for a § 523(a)(2) dischargeability complaint is whether the debtor actually obtained any money, property, services or an extension, renewal or refinance of credit.").

The elements of § 523(a)(2)(B) require that (1) the false financial statement is a writing respecting the debtor's financial condition; (2) the financial statement is materially false; (3) the debtor intended to deceive; and (4) the creditor reasonably relied on the statement. In re McCleary, 284 B.R. 876, 885 (Bankr. N.D. Iowa 2002). The first element under § 523(a)(2)(B) requires application of a two-prong test. The first prong is a determination of the existence of a document and the second prong focuses on the content of the document. Id. An objecting creditor who relies on a debtor's oral misrepresentations of his or her financial wherewithal will not be entitled to a nondischargeability determination under § 523(a)(2)(B). Id.

Both § 523(a)(2)(A) and (a)(2)(B) require the creditor to prove the debtor's state of mind. The second element of

5

§ 523(a)(2)(A) requires that the debtor knew the representations were false at the time they were made, and the third element of (a)(2)(B) requires that the debtor intended to deceive the creditor.

The record indicates that Mr. Bakker entered into the Judgment by Confession and Deferred Payment Agreement with the belief that he was to pay $30,000 per month on his past debt. He testified that he issued post-dated checks in groups because he did not want to miss payment deadlines, thereby violating the Judgment by Confession and Payment Agreement. He further testified that he intended to pay Dunkerton, estimating that future sales of hogs would ensure that there was enough money in his farming account. In addition to the post dated checks, Mr. Bakker wrote several other checks to Dunkerton that were honored by his bank. At the time the checks were issued, Mr. Bakker had not experienced any problems with Peoples Bank covering his checks. Mr. Bakker's banker, Gary James, testified that Mr. Bakker did not know the bank was going to close his account. This Court concludes that Mr. Bakker neither knew the representations were false nor intended to deceive Dunkerton.

### SECTION 727(a)(4)(A)

Section 727(a)(4)(A) states that a debtor is entitled to a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." To prove a false oath, the plaintiff must show by a preponderance of the evidence that (1) Debtor made a statement under oath; (2) that statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related materially to Debtor's bankruptcy case. In re Gehl, 325 B.R. 269, 276 (Bankr. N.D. Iowa 2005).

For a false oath to bar a discharge, the false statement must be both material and made with intent. Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992); In re Korte, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001). Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false. Id. As a debtor is not likely to admit to fraudulent intent, the debtor's course of conduct and surrounding circumstances may also be considered. Gehl, 325 B.R. at 277.

6

Plaintiff has not presented any grounds for applying § 727(a)(4)(A) to deny the Bakkers' discharge in this case. This section requires that the false statement be made "in or in connection with the case." No testimony was given to indicate that Mr. or Mrs. Bakker made a false oath or statement in or in connection with the case. The only evidence presented at trial that alleged a false statement related to an old tax return, which is outside the scope of this case.

### SECTION 727(a)(4)(C)

In order to sustain an objection under § 727(a)(4)(C), the creditor must establish (a) knowledge and a fraudulent intent on the part of the debtor and (b) the giving of money for a promise of forbearance by the creditor. See generally 2 Collier on Bankruptcy ¶ 727.06 (Henry J. Sommer et al. eds., 3rd ed. rev. 2005). As stated above, Dunkerton has failed to prove knowledge and fraudulent intent by the Bakkers.

### SECTION 727(a)(5)

A debtor who has "failed to explain satisfactorily, before determination of denial of discharge under [§ 727(a)], any loss of assets or deficiency of assets to meet the debtor's liabilities" is not entitled to a Chapter 7 discharge. 11 U.S.C. § 727(a)(5). A claim under § 727(a)(5) first requires proof that the debtor no longer has an asset he once had. In re Caulfield, 192 B.R. 808, 821 (Bankr. E.D.N.Y. 1996). If the plaintiff makes a prima facie case, the burden of production shifts to the debtor to provide a satisfactory explanation for the loss. Id. The court in Caulfield stated:

> To be satisfactory, the explanation must convince the court that the debtor "has not hidden or improperly shielded assets," and "must convince the court of the debtor's business-like conduct and good faith and must appear reasonable such that the court 'no longer wonders' what happened to the assets." The Code does not require that the Debtor's explanation be meritorious, or "that the loss or other disposition of assets be proper; it only requires that the explanation satisfactorily account or the disposition."

Id. at 821-22 (citations omitted)

7

Plaintiff did not present any evidence to prove that Debtors had improperly hidden or shielded their assets. Mr. Bakker's banker, Gary James, testified that it was not unusual for large numbers of hogs to be housed in different facilities. Plaintiff's own witness, Steve Albers, testified that he had taken inventory of the hogs that were delivered to Mr. Bakker, and he had reported the inventory numbers to the general manager at Dunkerton.

### SECTION 727(a)(7)

Section 727(a)(7) concerns activity by a debtor in connection with another bankruptcy case concerning an insider. Plaintiff has not presented any evidence for applying § 727(a)(7) to deny the Bakkers' discharge in this case. Dunkerton has not identified any other case concerning an insider which would make § 727(a)(7) applicable to the Debtors.

### ATTORNEY'S FEES

Plaintiff asserts it is entitled to attorney fees and costs under § 523(d), which states:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d)(2005).

Section 523(d) does not allow Plaintiff to receive attorney's fees. The plain language of the statute indicates that § 523(d) only applies to debtors.

Debtors requested fees pursuant to 28 U.S.C. § 1927, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any

> Territory thereof who so multiplies the proceedings
> in any case unreasonably and vexatiously may be
> required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees
> reasonably incurred because of such conduct.

28 U.S.C. § 1927 (2005).

Section 1927 warrants sanctions when an attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." <u>Tenkku v. Normandy Bank</u>, 348 F.3d 737, 743 (8th Cir. 2003).

Debtors also request attorney fees pursuant to Bankruptcy Rule 9011, which states

> (c) Sanctions.  If, after notice and a
> reasonable opportunity to respond, the court
> determines that subdivision (b) has been violated,
> the court may . . . impose an appropriate sanction
> upon the attorneys, law firms, or parties that . . .
> are responsible for the violation.

Rule 9011 sanctions are warranted if a party's pleading is not well grounded in fact, existing law, or is not a good faith argument for an extension, modification, or reversal of the existing law.  <u>In re Russ</u>, 187 F.3d 978, 981 (8th Cir. 1999); Fed. R. Bankr. P. 9011(b).  Bankruptcy Rule 9011 gives the bankruptcy court discretion to assess attorney's fees as sanctions against a party who fails to comply with the rule. <u>In re Clark</u>, 223 F.3d 859, 864 (8th Cir. 2000); <u>In re Gilbertson Restaurants</u>, No. 04-00385, 2005 WL 994023 (Bankr. N.D. Iowa Apr. 26, 2005).

> [Bankruptcy] courts are established for the benefit
> of litigants and all parties should ordinarily be
> presumed to be acting in good faith and for a
> legitimate purpose. Sanctions imposed too readily
> can have an undesired chilling effect on legitimate
> litigation. In determining the appropriateness of
> sanctions, the Court must often balance the
> desirability of access against potential use of the
> courts for inappropriate purposes.

<u>Gilbertson Restaurants</u>, 2005 WL 994023 at *3.

Sanctions are not appropriate in this case.  No evidence indicated that Plaintiff brought this action in bad faith or with intentional or reckless disregard of attorney's duties to this Court.

### MOTION FOR DIRECTED VERDICT

At the conclusion of trial on December 13,2005, Mr. Dunbar made an oral motion for Directed Verdict for Lisa Ann Bakker, claiming there was no evidence of Ms. Bakker's involvement in the hog farming operation.  Mr. Dunbar also made an oral motion for Directed Verdict for Ryan Duane Bakker claiming no evidence of misrepresentation or fraud.

"[F]or Plaintiff to defeat the Defendant's motion for a directed verdict dismissing this adversary proceeding, the record as of the close of the Plaintiff's case-in-chief must establish a prima facie case under at least one of the dischargeability sections upon which the Plaintiff's Complaint is based."  In re Hoover, 301 B.R. 38, 45 (Bankr. S.D. Iowa 2003).  The Court concludes no evidence was presented during trial that concerned Lisa Ann Bakker.  Plaintiff did not present any evidence to demonstrate that Ms. Bakker had any dealings with Dunkerton, wrote any of the post dated checks at issue, or had any involvement with the hog farming operation.  The Court concludes Debtor Lisa Ann Bakker is entitled to a directed verdict.

### CONCLUSIONS

Plaintiff has failed to prove by a preponderance of the evidence that Mr. Bakker intended to deceive Dunkerton or that he made false representations to Dunkerton under § 523(a).  Further, Plaintiff has failed to prove its claim by a preponderance of the evidence that discharge should be denied based on allegations that Mr. Bakker made a false oath or account under § 727(a)(4)(A), had fraudulent intent under § 727(a)(4)(C), hid assets under § 727(a)(5), or committed an improper act in connection with another bankruptcy case under § 727(a)(7).  Plaintiff is barred by the plain language of § 523(d) from receiving attorney's fees.  Debtor has failed to prove that Plaintiff brought this action in bad faith and is therefore not entitled to recover attorney's fees under 28 U.S.C. § 1927 or Rule 9011.

**WHEREFORE**, Defendant's motion for directed verdict with respect to Lisa Ann Baker is GRANTED.

**FURTHER**, Plaintiff Dunkerton Cooperative Elevator's Complaint Challenging Dischargeability of Debt and to Deny Discharge with respect to Ryan Duane Bakker is DENIED.

**FURTHER**, Plaintiff's and Defendants' requests for attorney's fees are DENIED.

**FURTHER**, Plaintiff has failed to prove the elements of its claims under § 523(a)(2), § 727(a)(4)(A), § 727(a)(4)(C), § 727(a)(5) or § 727(a)(7) by a preponderance of the evidence.

Dated and Entered: January 27, 2006

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE